Pee Curiam.
 

 By the bill of exceptions in this cause it appears that the plaintiff gave in evidence a grant to William Alexander for 200 acres, dated the 13th of September, 1802; a deed of conveyance from Alexander of 40 acres, a part thereof, to William Hargis, dated the 10th of June, 1805, and a deed from Hargis to the lessor of the plaintiff for the same 40 acres, dated the 28th of March, 1811; which 40 acres covered lands in possession of the defendants at the commencement of this action. The entry made by Alexander |was also produced, dated the 21st August, 1800, which is for the same land included in the grant. The defendants claim under a grant to Frederick Deboe, for 195' acres, dated in 1809, which includes the land in controversy, and a copy of the entry on which is founded in these words: “ Wilson Cage, of A. Ellison, enters 274 acres of land on the north side of Cumberland River, on the waters of Dixon’s Lick'Creek, near the head of said creek, running west, north, and as the law directs for complement,
 
 *478
 
 dated the 27th of December, 1707. W. Cage, Locator.” Wilson Cage deposed, that John Douglass furnished the location on which the entry was made for the benefit of both; that he, with said Douglass, John Carr, and Frederick Deboe, went on * the land in dispute to survey the entry. Douglass, who is now dead, said that was the place he located. They made a corner and ran two lines. The witness was dissatisfied with the quality of the land. Deboe, who then lived on the land and held it under another claim, told them that the east fork would suit the calls of the entry as well or better. It was better land. The creek was the largest: and was called Dixon’s Lick Creek. That where they were was called Dixon’s Lick Branch. They declined surveying, and he, Cage, shortly after sold his interest to- M‘Murray ; and he, claiming under the entry in 1798, settled on the eastern fork of the creek, and continued to live there under that claim for eight or nine years; and Douglass, apprehensive that the warrant was not good, entered at that place by another warrant, and about the year 1808 sold the first entry to Frederick Deboe, who had it surveyed on the land where Douglass and Cage first begin to survey in 1798. This witness in 1797 knew the creek below the junction to be called Dixon’s Lick Creek. The west fork, on which the land in dispute lies, runs through a lick 200 yards above the junction, and is about two miles long to the head. The east fork runs round the head of the other, and is about three and a half miles long. There is another fork coming in on the west side of the west fork, and is about one mile and a half long. From the time he was there in 1798 till the present, the west fork has been Called Dixon’s Lick Creek. M‘Murray stated that he purchased of Cage in 1798, and heard Douglass say the land he intended to enter vtas that now in dispute. He and Douglass settled on the east fork, and continued to reside there, claiming under the entry, eight or nine years, when Douglass laid another warrant, and about eight years ago sold the entry to F. Deboe. From the time he and Douglass settled on the east fork it was notorious that he and'Douglass had ceased to claim it there, but claimed where they lived under the entry until it was * sold to Deboe. His impression was that the entry had been removed on the book, but W. Hargis, in 1808, told him otherwise. Alexander, under whom the plaintiff claims, lived about five miles distant in 1800. F. Deboe, in 1798,
 
 *479
 
 called the creek where the land in controversy lies,
 
 Dixorís Lick Branch.
 
 The creeks have retained their names ever since. John Carr knows nothing about the names of the creeks. He was present when Cage and Douglass were about to survey on the entry. They made a beginning and ran two lines, then declined proceeding. Douglass said that was the place he located. In 1808, Deboe asked him to show the corner. He did so. It is the same at which the grant begins, under which the defendants claim.
 

 ¡il
 
 S. Williams, a witness, passed by the lick in 1789; called the creek that runs through it Dixon’s Lick Creek. Did not then know of the east fork until 1796. They called it the east fork of Dixon’s Lick Creek; always considered • the creek passing through the lick to be Dixon’s Lick Creek. Never heard- any other name till now; never heard it called Dixon’s Lick Branch. Had the warrant been put into his hands to survey, he would have surveyed it as it has been done.
 

 James Sanders, a witness, had passed by the lick before 1784. Understood the creek to be Dixon’s Lick Creek; never heard it called Dixon’s' Lick Branch. Not much acquainted there after it became settled.
 

 James Bradley, a witness, lived at Major Dixon’s near the place in controversy, in 1797. Heard F. Deboe, who lived where the defendants now claim, call that creek Dixon’s Lick Branch, and the east fork where Douglass and McMurray lived, was afterwards called Dixon’s Lick Creek; and they have been thus called ever since. In 1806 he understood F. Deboe claimed the land as an occupant, but afterwards purchased the entry. Douglas and Cage claimed the land under the entry on the east fork.
 

 * D. Hammock, a witness, settled in the neighborhood in 1798 or 1799 ; always heard the creek where the defendants live, called Dixon’s Lick Branch, and the other, where Douglass and McMurray lived, called Dixon’s Lick Creek.
 

 It was also proved that the creek now called Dixon’s Lick Branch, is included nearly in the centre of the survey, which extends within a few hundred yards of the head of the creek. If it were run so as to include the head of the creek, it would still cover the disputed land.
 

 The defendants also produced two entries calling for Dixon’s Lick Creek, one made in 1786, by M. Armstrong, for 640 acres,
 
 *480
 
 which is surveyed across both forks, and another entry, by R. Alexander, in 1793, surveyed on the creek where the defendants reside.
 

 This is the whole of the evidence in substance. The plaintiff’s counsel prayed the court to instruct the jury, first, that Cage’s entry was vague, and not a special entry; secondly, that F. Deboe was concluded from setting up the said entry against the plaintiff’s title, which was acquired after Douglas and Cage had declined surveying at that place, and were living on the east fork, claiming there under the entry.
 

 The court did not so charge the jury; but charged them that Douglass, Cage, and McMurray, claiming said entry at a different place from where it was afterwards surveyed, or abandoning for a time the place first claimed, will not be sufficient in a court of law to prevent Deboe from claiming said land, under said entry, against the younger entry of the plaintiff; and also, if they believed from the evidence that the creek on which the land is situated was, before and at the time of the entry, called Dixon’s Lick Creek, then said entry would be special to include the land at the head thereof. And in ascertaining
 
 that,
 
 the jury ought to take into view the circumstance of this branch of the creek passing through the lick.
 

 To this opinion the plaintiff excepted, and after verdict * prayed for a new trial, because, as was urged, the same was contrary to evidence and contrary to law.
 

 The motion was overruled, to which there was an exception. The error's assigned are, first, that judge erred in his charge to the jury; and, secondly, in refusing to grant a new trial. In the charge the judge said that the claimants under the entry, abandoning for a time the place first claimed (that is to say, the place where the defendants live), or claiming at another place, will not in a court of law be sufficient to prevent Deboe, the purchaser, from claiming under it against Alexander’s entry of a younger date. This entry was made at a time when it appears from the evidence to have been notorious that Douglass and McMurray had abandoned the place and claimed another. Is this such an act as will destroy the defendants’ claim under the entry, and if so can it be taken advantage of in a court of law ? It is thought at present that when a man makes an entry, and taken possession of land claiming notoriously under his entry, and hath continued that possession for a considerable time, he ought not to be permitted to set up his entry to defeat a claim which originated at the time of his abandonment.
 
 *481
 
 His conduct in sucb case appears to be a general declaration to all the world that they might enter the land without any fear or interruption from him. But if any relief can be had in such a case it is on inquiry on a matter
 
 in pais
 
 more proper for a court of equity.
 

 Courts of law in North Carolina, and formerly in this State, would not permit an inquiry beyond the grant. But now by the established practice, entries being matters of record, though in their nature only equitable titles, may be examined and decided on in a trial at law. The courts have not gone further than this. It seems right they should stop here, and not permit other equitable matters
 
 in pais
 
 to render a grant ineffectual. * Under these impressions, it is believed the court did not err in this part of the charge.
 

 The next inquiry is, whether this entry be what is usually termed a special entry. It calls for 274 acres of land, on the south side of Cumberland River, on the waters of Dixon’s Lick Creek,
 
 near
 
 the head of said creek, running west, north, and as the law directs. On the face of the entry, it appears sufficiently descriptive and certain for land
 
 at
 
 the head of Dixon’s Lick Creek; and when the creek is ascertained, it can be fixed with precision.
 

 The ambiguity, if any, arise solely from the evidence given on the trial, respecting the names by w'hich the water-courses in that quarter w'ere known. This was properly left to the jury to determine from the evidence. There is no substantial error in this part of the charge.
 

 The next error assigned is. the refusal to grant a new trial. The bill of exceptions sets out the whole of the evidence, and it is insisted that the verdict is contrary to law and evidence ; that the jury erred in their application of the principles of law to the evidence.
 

 It is unnecessary here to analyze the evidence. The evidence if not doubtful, perhaps preponderated against the verdict; but it was the province of the jury to determine for themselves. And by inspection of this record, we find this to be the third verdict for the defendants. The two former were set aside, and new trials granted. An application to the court to set aside this third verdict of a jury, on a matter properly before them, ought not to have succeeded. See the act of 1801, ch. 6, § 59.
 
 Let judgment be affirmed.
 

 
 *482
 
 See, as to
 
 setting aside verdicts, Trott
 
 v.
 
 West,
 
 10 Yer. 499;
 
 Trott
 
 v.
 
 West,
 
 Meigs, 163;
 
 Turner
 
 v.
 
 Ross,
 
 1 Hum. 16;
 
 Kelton
 
 v. Bevins, Cooke, 90;
 
 White
 
 v.
 
 Hembree,
 
 1 Tenn. 529;
 
 East Tenn. & Ga. R. R.
 
 v. Hackney, 1 Head, 169;
 
 Wilson
 
 v.
 
 Greer,
 
 7 Hum. 513. See King’s Digest, 9411, 11,369.